UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT FREEDMAN, | : |
| | : C.A. No. |
| Plaintiff, | : |
| | : |
| v. | : **COMPLAINT** |
| | : |
| JPMORGAN CHASE & CO., JAMES DIMON, AND DANIEL E. PINTO, | : |
| | : |
| Defendants. | : |

Plaintiff, Robert Freedman, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the plaintiff himself, which are alleged upon knowledge, as follows:

**PRELIMINARY STATEMENT**

1. In 2006, in the wake of the Enron, WorldCom and Tyco options-related scandals, the Securities and Exchange Commission ("SEC") implemented a new set of rules dictating how companies must disclose executive and director compensation to their stockholders. Among these requirements, the SEC mandated that companies disclose the "grant date fair value" of stock awards and option awards in their proxy statements following the fiscal year in which such awards were granted. This requirement has been codified in Regulation S-K, 17 C.F.R. § 229 (Item 402 (c)(2)(v) and (vi)).

2. In doing so, the SEC affirmed that full disclosure of executive and director compensation decisions is important for investors to know at the time – or soon after – those decisions are made. Where that compensation is an unconditional cash award to an executive or

director, the disclosure is transparent.  Where the compensation is, however, an award of options or a complex equity instrument that expires or vests years later, the value of the compensation award on the date of grant is somewhat opaque.  Providing the "grant date fair value" of such compensation in the proxy statement using approved accounting methods makes such compensation transparent to investors by assigning a dollar value to the awards.

3. But this rule mandating that companies provide the grant date fair value of equity-pay instruments is not as simple as disclosing the maximum possible award value.  Instead, to determine the fair value of such awards on the date of grant often requires the use of mathematical models.  Such models in turn require the implementation of assumptions concerning such awards.  Such assumptions can include, but are not limited to: expected volatility, interest rates, and expected dividend yields.

4. Company managers have discretion over the assumptions that are fed into the models.  Moreover, companies are incentivized to manipulate these assumptions to reduce the reported grant date fair value of equity awards.  Indeed, many studies have demonstrated the selective discounting of such awards, thereby making the compensation appear less than it truly is.  *See*, *e.g.*, Eli Bartov et al., Managerial Discretion and the Economic Determinants of the Disclosed Volatility Parameter for Valuing ESOs, 12 Rev. Acct. Stud. 155, 158 (2007) (finding in a sample of over 9000 firm-years from 1998 to 2004 that firms opportunistically selected volatility measures to reduce reported compensation); Preeti Choudhary, Evidence on Differences Between Recognition and Disclosure: A Comparison of Inputs to Estimate Fair Values of Employee Stock Options, 51 J. Acct. & Econ. 77, 91 (2011) (finding that opportunistic selection of volatility assumptions to minimize option value and compensation cost increased after stock option expensing was mandated in 2004); Leslie Davis Hodder et al., Employee Stock

Option Fair-Value Estimates: Do Managerial Discretion and Incentives Explain Accuracy?, 23 J. Contemp. Acct. Res. 933, 938-39 (2006) (finding use of discretion to reduce pro forma earnings among a subset of firms).

5. To police such manipulation, at the same time the SEC required the disclosure of the grant date fair values of such equity-based awards in 2006, the SEC also required that companies disclose the model and assumptions they use to calculate such values. This requirement is codified in Instruction 1 to Regulation S-K, 17 C.F.R. § 229 (Item 402(c)(2)(v) and (vi)). Using these assumptions, it is possible for analysts (and shareholders) to re-run the calculation to confirm the disclosed grant date fair values by using a free online pricing calculator.[1]

6. But despite this SEC requirement, Defendant JPMorgan Chase & Co. ("JPMorgan Chase" or the "Company") *has failed to disclose such information to stockholders in connection with two massive special option awards granted to Chairman and CEO James Dimon ("Dimon") and President and COO Daniel E. Pinto ("Pinto")*. According to the April 4, 2022, Proxy Statement ("2022 Proxy Statement") that disclosed these awards, these two men were granted these two "special" awards "that are not part of their regular annual compensation" on July 20, 2021 and December 14, 2021, respectively. The 2022 Proxy Statement claims that Dimon award's has a grant date fair value of *$52,620,000* and that Pinto's award has a grant date fair value of *$27,862,500*, but without the assumptions used to value these awards it is impossible for shareholders to verify these amounts or to know if the assumptions used to arrive at those values have been manipulated. While the 2022 Proxy Statement claims that "The Firm's

---

[1] For example, Radford, a compensation consulting company, provides such a calculator. https://www.radford.com/home/portal/underwater_exchange_calculator.asp

accounting for employee stock-based incentives (***including assumptions used to value employee stock options and [Stock Appreciation Rights ("SARs")]***) is described in Note 9 to the Firm's Consolidated Financial Statements in the 2021 Annual Report on pages 218-219," those pages of the 2021 Annual Report ***do not provide any of the assumptions used to calculate employee stock options and SARs***.  Instead, all these pages report is "[F]or SARs and stock options, [compensation expense] is measured at the grant date using the Black-Scholes valuation model." None of the assumptions that are input into this model are reported or provided to shareholders anywhere in either the 2022 Proxy Statement or the 2021 Annual Report or elsewhere.

       7.      These omissions are all the more glaring because JPMorgan Chase does provide the model and assumptions used to calculate the *pension benefits* of its Named Executive Officers in the 2022 Proxy Statement, and these are disclosed in the 2022 Proxy Statement as follows:

> Key assumptions [used to calculate present value of accumulated pension benefits] include the discount rate (2.50%); interest rates (4.75% crediting to project cash balances; 2.00% to convert annuities to lump sums and lump sums to annuities) and mortality rates (for the present value of annuities, the Pri-2012 (white-collar) projected generational mortality table with projection scale MP2020; for lump sums, the UP94 mortality table projected to 2002, with 50%/50% male/female weighting). We assumed benefits would commence at normal retirement date or unreduced retirement date, if earlier. Benefits paid from the Retirement Plan were assumed to be paid either as single-sum distributions (with probability of 85%) or life annuities (with probability of 15%). Benefits from the Excess Retirement Plan are paid as single-sum distributions. No death or other separation from service was assumed prior to retirement date.

       8.      Plaintiff brings this action to rectify this failure to provide essential information concerning the compensation granted to JPMorgan Chase's most highly-compensated executives.  Plaintiff also brings this action to determine whether Defendants have failed to accurately disclose the fair value of their compensation, which can only be done by knowing the assumptions JPMorgan Chase makes to calculate the grant date fair values.

4

## JURISDICTION

9. The jurisdiction of this court is founded upon the application of questions of federal law pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

10. The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. §78n(a) and Rule 14a-3, 17 C.F.R. § 240.14a-3, Rule 14a-9, 17 C.F.R. § 240.14a-9, Schedule 14A, 17 C.F.R. § 240.14a-101, and Regulation S-K, 17 C.F.R. § 229, of the United States Securities and Exchange Commission (the "SEC").

## THE PARTIES

11. Plaintiff Robert Freedman is a stockholder of Defendant JPMorgan Chase, and he is a shareholder of record for purposes of the 2022 Proxy Statement and May 17, 2022 annual meeting.

12. JPMorgan Chase is a Delaware corporation with its principal place of business in New York, New York. Its stock is traded on the New York Stock Exchange under the symbol JPM. It is a financial services firm. Its fiscal year ended December 31, 2021.

13. Defendant Dimon is JPMorgan Chase's CEO and Chairman of the Board.

14. Defendant Pinto is JPMorgan Chase's President and Chief Operating Officer and Chief Executive Officer of the Corporate & Investment Bank.

## WRONGFUL ACTS AND OMISSIONS

15. The compensation of corporate directors and key officers is a matter of direct and deep concern to shareholders in the exercise of their right to vote. The SEC addresses this concern with detailed, explicit disclosure rules and regulations. This complaint challenges

JPMorgan Chase's proxy statement and annual report for omitting information specifically required by those rules and regulations and providing misinformation.

### The False and Misleading 2022 Proxy Statement

16.     This Action is principally concerned with remedying the 2022 Proxy Statement furnished in advance of the May 17, 2022 annual stockholders meeting.

17.     In the 2022 Proxy Statement, the board of directors solicits the stockholders' proxies to vote in favor of the election of the ten Defendant directors named therein, including Defendant Dimon, and in favor of Dimon and Pinto's fiscal 2021 compensation and that of the other named executive officers ("NEOs") on a non-binding, advisory basis under §14A of the Exchange Act, 15 U.S.C. §78n-1 (the "say-on-pay vote").

18.     Section 14(a) of the Exchange Act makes it unlawful for any person to solicit or to permit the use of his name to solicit any proxy in contravention of the SEC's rules and regulations.

19.     SEC Rule 14a-9 forbids the solicitation of a proxy by means of a proxy statement containing materially false or misleading misrepresentations or omissions.

20.     SEC Rule 14a-3(a) requires that public companies may not solicit stockholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A." It is a violation of § 14(a) of the Exchange Act to misrepresent or to omit information specifically required by the SEC's rules and regulations.

21.     Because the 2022 Proxy Statement solicits action to be taken at the meeting for the election of directors, SEC Schedule 14A (Item 8(a)) requires the 2022 Proxy Statement to furnish the information required by SEC Reg. S-K (Item 402), concerning Director and Executive Compensation.

22.     In addition, 15 U.S.C. §78n-1 requires proxy statements for which the SEC requires compensation disclosure to include a separate resolution for a stockholder vote on executive compensation as disclosed pursuant to SEC Reg. S-K (Item 402), i.e. the "say-on-pay vote."

23.     SEC Schedule 14A (Item 8(a)) and Reg. S-K (Item 402(c)(1)) require such proxy statements to report the compensation of the NEOs for the company's last three completed fiscal years in the form of the Summary Compensation Table.

24.     SEC Reg. S-K (Item 402(c)) requires strict compliance with the Summary Compensation Table so that it can accomplish its stated purpose of helping stockholders understand how compensation components relate to each other and use the Table to compare compensation from year to year and from company to company.  SEC Release No. 8732A, *Executive Compensation and Related Person Disclosure*, 2006 WL 2589711 at *21 (Sept. 8, 2006).  SEC Release No. 8732A at *24 and SEC Reg. S-K (Item 402 (c)(2)(v) and (vi)) both require stock awards to be reported in column (e) and option awards to be reported in column (f) of the Summary Compensation Table.

25.     Instruction 1 to Item 402(c)(2)(v) and (vi) requires for awards reported in columns (e) and (f) the inclusion of a footnote disclosing all assumptions made in the valuation by reference to a discussion of those assumptions in the registrant's financial statements, or discussion in the Management's Discussion and Analysis.  The sections so referenced are deemed part of the disclosure provided pursuant to this Item.  FASB ASC Topic 718-10-50-2(f)(2) requires disclosure of those assumptions.  FASB ASC Topic 718 means Financial Accounting Standards Board Accounting Standards Codification.  Topic 718 covers the

accounting and disclosure standards concerning stock and option compensation.  The SEC requires entities under its jurisdiction to comply with FASB's standards and interpretations.

26.     The disclosure of the Dimon and Pinto's compensation in the Summary Compensation Table in the 2022 Proxy Statement is in contravention of SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

27.     The 2022 Proxy Statement represents that in fiscal year 2021, JPMorgan Chase awarded its Dimon and Pinto "special option awards in the form of SARs that are not part of their regular annual compensation" with grant date fair values of $52,620,000 and $27,862,500, respectively.  But while in footnote 4 to the Summary Compensation Table, the 2022 Proxy Statement claims that "The Firm's accounting for employee stock-based incentives (*including assumptions used to value employee stock options and SARs)*) is described in Note 9 to the Firm's Consolidated Financial Statements in the 2021 Annual Report on pages 218-219," those pages of the 2021 Annual Report *do not provide any of the assumptions used to calculated employee stock options and SARs*.  Instead, all these pages report is "[F]or SARs and stock options, [compensation expense] is measured at the grant date using the Black-Scholes valuation model."

28.     As such, the statement claiming that the assumptions used to value the stocks options and SARs are false.  There are no "assumptions used to value employee stock options and SARs)) … in Note 9 to the Firm's Consolidated Financial Statements in the 2021 Annual Report on pages 218-219."  And these assumptions are not provided by JPMorgan Chase anywhere else.  As a result, investors are left in the dark as to how JPMorgan Chase determines

the fair value of the compensation provided to the Company's most senior executives in violation of SEC regulations.

29. In the 2021 Form 10-K and in footnote 5 to the Grants of Plan-Based Awards Table in the 2022 Proxy Statement, JPMorgan Chase states that it used a Black-Scholes valuation model to calculate the grant date fair values of Dimon and Pinto's employee stock options and SARs.  Pursuant to FASB ASC Topic 718, the assumptions for a Black-Scholes valuation model are (a) expected volatility, (b) dividend yield, (c) risk-free interest rate, and (d) expected life.  But none of these assumptions (or any others) are disclosed in the 2021 Form 10-K.

30. JPMorgan Chase's management selects and quantifies those assumptions.  But (as discussed above in paragraph 4) authoritative surveys reveal that corporate managements tend to select assumptions that reduce reported executive compensation.  Disclosure of those assumptions is material because the technology is available to confirm the results and re-run the analysis with different assumptions.  SEC rules and regulations and the accounting standard require those quantitative disclosures.  FASB ASC Topic 718-10-50-2(f)(2).  Their omission contravenes the aforesaid SEC regulation, and the 2022 proxy solicitation violates §14(a) of the Exchange Act.

31. Because of these contraventions of the SEC rules and regulations, the 2022 Proxy Statement is in violation of §14(a) of the Exchange Act.  As a result, the Court should enjoin the election of the directors and the non-binding, advisory vote on the named executive officers' fiscal 2021 compensation.  In addition, to the extent discovery reveals that Defendants have understated the grant date fair value of executive compensation, the Court should reduce Defendants' compensation and impose damages.

32. Also, the Court should order corrective disclosures to JPMorgan Chase 2022 Proxy Statement. That Proxy Statement must include a Summary Compensation Table disclosing the assumptions made to value the special options awards given to Dimon and Pinto and the method used to arrive at the grant date fair values of such compensation.

## COUNT I
### (Exchange Act Violations in the Election of Directors Proposal)

33. Plaintiff incorporates all of the above paragraphs as if stated herein. The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

34. As a result of these actions, plaintiff will be injured, and he has no adequate remedy at law. He will suffer irreparable harm in the form of an uninformed vote on the director Defendants on May 17, 2022 if no action is taken to ameliorate this harm.

35. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A, and which explains what assumptions are used to determine the grant date fair value of the directors' compensation, if any.

36. Consequently, JPMorgan Chase should be enjoined from presenting the director proposal for a stockholder vote at the May 17, 2022 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any JPMorgan Chase stockholder in connection with these proposals.

## COUNT II
**(Exchange Act Violations in the Proposal to Approve the Compensation of JPMorgan Chase's Named Executive Officers)**

37. Plaintiff incorporates all of the above paragraphs as if stated herein. The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

38. As a result of these actions, plaintiff will be injured, and he has no adequate remedy at law. He will suffer irreparable harm in the form of an uninformed "say-on-pay" vote on May 17, 2022 if no action is taken to ameliorate this harm.

39. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

40. Consequently, JPMorgan Chase should be enjoined from presenting the "say-on-pay" proposal for a stockholder vote at the May 17, 2022 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any JPMorgan Chase stockholder in connection with these proposals.

## JURY DEMAND

41. Plaintiff demands trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A. Disclosure of the assumptions made in determining the grant date fair values of the special option awards given to Dimon and Pinto, in conformity with FASB ASC Topic 718 and SEC Reg. S-K.

11

B. Reduction of the Defendants' compensation to the extent understated in the 2022 Proxy Statement;

C. Damages from the unlawful 2022 Proxy Statement;

D. An award of plaintiff's attorneys' fees to his counsel and expenses for accountants and other experts; and

E. Such other and further relief, whether similar or different, as is just or equitable.

Dated: April 14, 2022                                **BARRACK, RODOS & BACINE**

By: /s/ A. Arnold Gershon
A. Arnold Gershon
Michael A. Toomey
640 8th Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Fax: (212) 688-0783
agershon@barrack.com
mtoomey@barrack.com

*Attorneys for Plaintiff*